IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**CHARLES LEE NEAL, II,**

    **Plaintiff,**

v.                                      Case No. 3:24-cv-00494

**WESTERN REGIONAL JAIL,
ADMINISTRATOR CARL ALDRIDGE,
STATE OF WEST VIRGINIA, KYLE
MOORE, SERGEANT TYLER DEWEESE,
STEVE TARBETT, GOVERNOR JIM
JUSTICE,**

    **Defendants.**

## MEMORANDUM OPINION and ORDER

Pending before the Court are the following documents: an Application by Plaintiff to Proceed without Prepayment of Fess or Costs, (ECF No. 1), Plaintiff's Complaint, (ECF No. 3), and numerous letter-form motions to expedite, for a hearing, and for witnesses, (ECF Nos. 8, 12, 16, 17, 18, 19, 20). For the reasons that follow, these motions are **DENIED**. Plaintiff is further **ORDERED** to file, within sixty (60) days, a correct and complete Application to Proceed Without Prepayment of Fees and Costs or pay the $405 filing fee and to amend his Complaint as further described herein.

### I. Relevant History

Plaintiff, Charles Lee Neal, II, is currently an inmate at Western Regional Jail and Correctional Facility in Barboursville, West Virginia. On September 11, 2024, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia. (ECF No. 3). Plaintiff has also drafted numerous handwritten letters as additional documentation in support of his complaint, (ECF Nos.

5, 6, 7, 9, 10, 11, 13), and various letter form motions, (ECF Nos. 8, 12, 16, 17, 18, 19, 20), in which he repeatedly regurgitates the same "facts" and allegations. The named defendants include Western Regional Jail, Administrator Carl Aldridge, State of West Virginia, Kyle Moore, Sergeant Tyler Deweese, Steve Tarbett, and Governor Jim Justice.

The undersigned notes that Plaintiff simultaneously filed a separate § 1983 action against Officer C.A. Varien, Officer Toler, Magistrate Steve Tarbett, Magistrate Melanie Sang, Western Regional Jail Transportation, and Judge Richard Tatterson. *Neal v. Officer C. A. Varien, et. al.,* Case No. 3:24-cv-00493 (hereinafter the "Officer Varien matter"). Plaintiff includes allegations for both matters (the Officer Varien matter and the present matter against WRJ) in the documents filed in this case.

Relevant here, Plaintiff was arrested after a December 9, 2023, incident in Point Pleasant, Mason County, by Sergeant Tyler Deweese. (ECF No. 11-1). The Criminal Complaint alleges that Plaintiff stabbed his father, Charles Lee Neal, Sr., with a kitchen steak knife, and Plaintiff's father later succumbed to his injuries. (*Id.*). Plaintiff was charged with murder under West Virginia Code 61-2-1. (*Id.*).

From a cursory review of the numerous handwritten documents, it appears that Plaintiff is complaining about the criminal complaint and temporary commitment order from this December 2023 arrest. (ECF No. 3). Plaintiff asserts that Magistrate Tarbett and Sergeant Deweese used an incorrect name and West Virginia Code section in an arraignment order and criminal complaint, respectively. (*Id.*). Specifically, Plaintiff alleges that "Charles L. Neal, Jr." and "Charles Lee Neal, Jr." were used on the temporary commitment jail order and criminal complaint, but Plaintiff's name is Charles Lee Neal, II. (*Id.*; *See also* ECF No. 7). He further complains that one document lists the date as 12-9-2023 and the other lists it as 12-10-2023. (ECF No. 7). Plaintiff also takes issue with

there being no time of arrival listed on the commitment order. (*Id.*). Lastly, Plaintiff alleges that the listed West Virginia Code contains nine crimes and is an incorrect Code for his case. (ECF Nos. 3, 5, 6, 7). Plaintiff provides no further facts or allegations on concerning what protected civil right of his has been violated or how any official deprived Plaintiff of those rights while acting under color of State law.

Similarly, concerning the other named Defendants, aside from listing their names on page one of his complaint, (ECF No. 3 at 1), and then again listing their names in a letter filed as an additional document in support of his Complaint, (ECF No. 10), Plaintiff makes no allegations against Western Regional Jail, Administrator Carl Aldridge, State of West Virginia, Kyle Moore, and Governor Jim Justice.

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having performed an initial review of the complaint and the numerous motions filed by Plaintiff pursuant to 28 U.S.C. § 1915(e)(2), the undersigned finds certain deficiencies in pleading that must be corrected by Plaintiff before this action can proceed.

## II. Deficiencies in the *In Forma Pauperis* Application

In this district, an *in forma pauperis* application (or Application to Proceed Without Prepayment of Fees and Costs) is not complete until the institution of incarceration has completed the certificate located at the bottom of page 2 of the Application, or the prisoner has submitted a transaction record of his inmate account. By obtaining this certification or transactional record, the court can verify whether the prisoner is entitled to proceed *in forma pauperis*.

Here, although Plaintiff completed the first portion of the application, the Certificate at the bottom of page 2 has been crossed out with the signature line being left blank, and Plaintiff failed to provide a copy of his transaction record of his inmate account. It appears Plaintiff was housed at William R. Sharpe, Jr. Hospital at the time of filing, but he has since been transferred to Western Regional Jail and Correctional Facility. (ECF Nos. 1, 1-1).

Therefore, the court **ORDERS** Plaintiff to fully complete, sign, and submit to the court within **sixty (60) days** an Application to Proceed Without Prepayment of Fees and Costs that includes the completed Certificate at the bottom of page two. The form will be provided to Plaintiff by the Clerk of Court. In the alternative, Plaintiff may pay the filing fee of $405.

### III. Deficiencies in the Complaint

As previously stated, in keeping with 28 U.S.C. § 1915(e)(2), the undersigned preliminarily reviewed Plaintiff's complaint to determine if the action is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Although *pro se* complaints, such as the one filed in this case, must be liberally construed to allow the development of potentially meritorious claims, the court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). At the same time, to achieve justice, the court may allow a *pro se* plaintiff the opportunity to amend his complaint in order to correct deficiencies in the pleading. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978).

### *Pleading Requirements*

Federal Rule of Civil Procedure 8 sets forth the general rules of pleading. According to Rule 8, a complaint must contain "a short and plain statement of the grounds for a court's jurisdiction … a short and plain statement of the claim showing that the pleader is entitled to relief … and a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The operative words here are "short" and "plain." An unnecessarily detailed and repeated recitation of seemingly unrelated events renders a complaint unintelligible.

Federal Rule of Civil Procedure 10 addresses the form of pleadings. Rule 10 requires the complaint to name all of the parties. Fed. R. Civ. P. 10(a). Under 42 U.S.C. § 1983, parties must be individuals, not units or entities. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, at *4 (D.S.C. 2010); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). Therefore, groups like "Western Regional Jail" and "State of West Virginia" are not properly named defendants. Plaintiff must identify as a defendant a specific person who, while acting under color of state law, deprived the plaintiff of a federally protected civil right, privilege, or immunity. *Id*.

In addition to naming persons as parties, Plaintiff is required to state his claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Along that line of thought, Federal Rule of Civil Procedure 20 discusses the parties that may be joined as defendants in the same action. According to Rule 20(a)(2), individuals may be joined as defendants in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with the respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

>(B) any questions of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Here, Plaintiff simultaneously filed another § 1983 action, and Plaintiff includes the "facts" and allegations from both actions in each letter form motion and handwritten documentation filed in support of his Complaint. Accordingly, Plaintiff must determine which claims are related and share common issues of law or fact and then join those claims and defendants in one action and include *only* the relevant facts and allegations for that specific matter. Allegations concerning the other matter must be drafted and filed separately for that case.

### *Failure to State a Claim*

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." To state a cause of action under § 1983, a plaintiff must allege facts showing that: (1) an official deprived the plaintiff of a federally protected civil right, privilege or immunity and (2) that the official did so under color of State law. 42 U.S.C. § 1983; *see also Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792 (D.S.C. Sept. 8, 2010). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. For an official to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D. Md. 1971)). Accordingly, Plaintiff must ensure that the people he names as Defendants in his suit are not joined simply because of their position at the Jail or with the government, because if that is the case,

then they should be summarily dismissed from the lawsuit. In light of this governing principle, Plaintiff must amend his complaint to set forth factual allegations explaining how each Defendant personally violated Plaintiff's constitutional rights.

### *Immunity*

Although it is unclear what constitutional rights violations claims Plaintiff is bringing against Magistrate Tarbett and Governor Jim Justice, Plaintiff is advised that his claims against these defendants may be barred by immunity pursuant to the Eleventh Amendment, judicial immunity, and/or qualified immunity.

The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

"The question of whether an agency or a state official is properly considered an arm of the state and, therefore, entitled to Eleventh Amendment immunity, is a question of federal law." *Coonts v. Randolph Cty. Circuit Court Judge*, No. 2:15-CV-21, 2015 WL 12791398, at *2 (N.D.W. Va. Sept. 18, 2015) (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. 425 (1997)). To determine whether an official is an arm of the state, the Fourth Circuit applies a four-factor test, which considers "whether the state treasury will be responsible for paying any judgment that might be awarded … [W]hether the entity exercises a significant decree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of State law." *Id.* The inquiry necessarily begins with the first factor because "the most important consideration is whether the state treasury will be affected." *Id.* (citations omitted). Importantly, "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *Id.* (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. at 431).

In *Kentucky v. Graham,* the Supreme Court addressed circumstances under which a State official was entitled to Eleventh Amendment sovereign immunity, finding that not all State officials qualified. *Id.,* 473 U.S. 159, 165-66 (1985) The Court made a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Id.*; *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court concluded that an official sued in his official capacity was entitled to sovereign immunity, while an official sued in his personal capacity was not. As the Court explained, the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, and the target of the claim is the entity's "policy or custom," not the individual official. *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-

capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The determination of whether a defendant has been named in his official or individual capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Turning to quasi-judicial and judicial immunity, it is well-settled that "judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. §

1983" even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 WL 4706255, at *4 (W.D. Va. Oct. 22, 2008) (citations omitted). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). "Magistrates are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges." *Id.*

Further, the "doctrine of quasi-judicial immunity applies to non-judicial officers 'performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" *Ward v. Plymale*, No. 3:12-cv-06186, 2013 WL 6164277, at *16 (S.D.W. Va. Nov. 25, 2013) (quoting *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994); *see also Jackson v. Houck,* 181 Fed. Appx. 372, 373 (4th Cir. 2006) ("Absolute immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function.") (internal quotations omitted). "The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel such as [court] clerks because of the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." *Boyd v. KLLM*

*Transp. Servs. Inc.*, No. 3:10-3208-JFA-PJG, 2011 WL 8318383, at *3 (D.S.C. Feb. 8, 2011) (internal quotations omitted).

There are only two conditions in which judicial immunity does not apply to bar a § 1983 claim for damages: (1) if the judge acted in the "clear absence of all jurisdiction" or (2) the judge's action was not a "judicial act." *King*, 973 F.2d at 356-57. Under the first option, "[a] distinction is drawn between acts that are performed in 'excess of jurisdiction' and those performed in the 'clear absence of all jurisdiction over the subject-matter,' with the former type of act accorded immunity." *Id.* Therefore, the question is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him, and, in answering that question, the scope of the judge's jurisdiction must be construed broadly." *Id. at 357* (internal quotations and markings omitted). In determining whether the act at issue was a "judicial act," the Court examines "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." *Id.* Notably, "the absolute immunity extended to a judge performing a judicial action is not in any way diminished even if his or her exercise of authority is flawed by the commission of grave procedural errors." *Id.* Such "errors do not render the act any less judicial, nor permit a determination that the court acted in the absence of all jurisdiction." *Id.*

Lastly, claims against Governor Jim Justice may be shielded by qualified immunity. Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few

individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

> "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. If a court finds that a claimed constitutional right was not clearly

established at the time of the alleged wrongdoing, the court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id*. Similarly, if a court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the Complaint is subject to dismissal for failure to state a claim.

### *One Single Document*

Finally, the undersigned notes that Plaintiff has filed numerous letters in support of his Complaint, some of which raise new allegations or provide additional explanation. Plaintiff is advised that he should include *all* allegations and facts relevant to his claims in one singular Amended Complaint and refrain from filing additional documents afterwards.

### *Conclusion*

Based on the foregoing, Plaintiff is **ORDERED**, within **sixty (60) days** of the date of this Order, to file an amended complaint under 42 U.S.C. § 1983 on the proper form, which will be provided by the Clerk of Court. The amended complaint shall include the names of the individual defendants who, acting under color of state law, violated Plaintiff's federal civil or constitutional rights. To the extent known to Plaintiff, the amended complaint shall include the addresses of the defendants. The amended complaint shall contain short and plain statements, *arranged in numbered paragraphs*, setting forth the basic facts upon which Plaintiff's claims are based, including what constitutional right the named defendant has violated, the dates of these occurrence, and the actions of the named defendant that caused the violation. The amended complaint may include claims and defendants that are connected by an event or series of events or

transactions and that share common issues of fact or law. Plaintiff is further advised to either type or ensure his handwriting is legible in all future filings and reminded to include *only* the allegations relevant to the subject case.

Further, if Plaintiff wishes to file more than one complaint, he should bear in mind that 28 U.S.C. § 1915 governs actions in which a prisoner seeks to proceed *in forma pauperis*. Section 1915(g) of the statute includes a "three strikes" rule, stating as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Consequently, Plaintiff may wish to carefully review his prospective cases before he files them to decide if they all meet the requirements of a § 1983 action. The amended complaint shall not contain extraneous or unnecessary information or attachments. It shall clearly and simply state the relief requested. Should Plaintiff, after review, decide he no longer wishes to pursue his claims, he should file a Notice of Voluntary Dismissal.

**Plaintiff is hereby given notice that a failure to file the Application to Proceed Without Prepayment of Fees and Costs and amend his complaint as ordered may result in a recommendation that the complaint be dismissed for failure to state a claim cognizable under 42 U.S.C. § 1983 and/or for failure to prosecute under Fed. R. Civ. P. 41 and L. R. Civ. P. 41.1.**

### IV.  Other Motions

Turning to Plaintiff's other motions, Plaintiff has filed seven letter-form motions, requesting a "speedy trial," a hearing or court date, to expedite, and for "the State to get

witnesses." Because these motions concern the originally filed Complaint, these motions are **DENIED** as **MOOT**.

Moreover, concerning Plaintiff's motion for a speedy trial or to expedite, (ECF Nos. 8, 20), to the extent Plaintiff is attempting to assert his Sixth Amendment right to a speedy trial, Plaintiff is hereby advised that the constitutional right to a speedy trial is applicable only in criminal cases, and thus, Plaintiff has no constitutional right to a speedy trial in this civil action. Construing Plaintiff's motions as a motion to expedite instead, Plaintiff is advised that civil actions are reviewed in the order in which they are filed, and Plaintiff has failed to show good cause for expedited review.

Further, a hearing is not appropriate at this stage of the proceedings, and his motions for such should be denied. (ECF Nos. 12, 16, 17, 19). As ordered herein, Plaintiff is to file an amended complaint that legibly, succinctly, and completely describes the allegations concerning the violation of his civil rights. He is also to either pay the filing fee or file a complete and correct application to proceed without prepayment of costs.

Plaintiff's motion for witnesses, (ECF No. 18), is also premature and inappropriate. In his motion, Plaintiff claims, "it is of the importance for the State Representative of this case to get witnesses and there [sic] names because I do not have the ability to do so and it is up to the State and you, your Honor to do so." Discovery has not yet been initiated in this case, and even if it had started, the Court cannot compel the State to secure witnesses on Plaintiff's behalf, nor does the Court perform discovery tasks for any party to a civil action. Rather, each party is obligated to conduct its own discovery. Furthermore, assuming Plaintiff is filing a motion to compel, this type of motion is only appropriate after discovery requests have been correctly served on a party, have not been timely or completely answered, and a meet-and-confer session has failed to resolve the outstanding

issues. At some point, if discovery opens in this matter, Plaintiff will have to request subpoenas from the Clerk of Court and will have to serve the non-parties with the subpoenas.

Plaintiff is reminded of his obligation to notify the Clerk of Court of any changes in his address.

The Clerk is directed to provide a copy of this Order to Plaintiff, along with an Application to Proceed Without Prepayment of Fees and Costs, a § 1983 complaint form, instructions for filing the complaint, an Authorization for the Release of Institutional Account Information and to Pay Fee, and the Explanation of Filing Fees.

**ENTERED:** April 3, 2025



Joseph K. Reeder
United States Magistrate Judge